Joseph WILLIAMS, Plaintiff,

v.

SECRETARY OF HEALTH, AND
HUMAN SERVICES, Defendant.

No. C–3–79–338.

United States District Court,
S. D. Ohio, W. D.

April 14, 1982.

Steven B. Horenstein, Dayton, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY ON PENDING OBJECTIONS TO REPORT AND RECOMMENDATION OF THE MAGISTRATE; DEFENDANT'S OBJECTIONS SUSTAINED IN THEIR ENTIRETY; PLAINTIFF'S OBJECTIONS SUSTAINED IN PART AND OVERRULED IN PART; MAGISTRATE'S REPORT AND RECOMMENDATION ADOPTED IN PART AND REJECTED IN PART; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to Defendant's objection, filed under 28 U.S.C. § 636(b)(1)(C), to the Magistrate's Report and Recommendation that both motions for summary judgment by Plaintiff and Defendant be overruled, and that the case be remanded for further proceedings. A synopsis of the history of this case is set forth below.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on April 21, 1978, alleging that he had been disabled, and unable to work, since February of 1974, due to chest and back pain, muscle spasms, arthritis, a nerve condition, and high blood pressure. The claims were denied initially and upon reconsideration by the Social Security Administration (SSA), whereupon Plaintiff requested a hearing. On January 18, 1979, a hearing was held before an Administrative Law Judge (ALJ), before whom Plaintiff appeared with his attorney. In addition, the ALJ received testimony from Dr. Thelma Brown, a vocational expert. On April 9, 1979, the ALJ rendered a decision finding that Plaintiff was not under a disability and was not entitled to benefits. Plaintiff then requested review by the Appeals Council, and the Council affirmed the ALJ's decision on August 29, 1979.

On September 13, 1979, Plaintiff filed his complaint with this Court, seeking judicial review of the administrative decision. The matter was referred to the United States Magistrate on January 7, 1980, pursuant to 28 U.S.C. § 636(b)(1). Upon cross motions for summary judgment, the Magistrate, in a "Report and Recommendation" dated November 10, 1980, recommended that Defendant's motion for summary judgment be overruled, that Plaintiff's motion for summary judgment be overruled, and that the case be remanded to the Secretary for further proceedings.

Defendant then filed a motion to review the Report of the Magistrate on November 24, 1980, pursuant to 28 U.S.C. § 636(b)(1)(C).

## II. DE NOVO REVIEW

■ In reviewing the decision of the Secretary, the Magistrate's task is to determine if that decision is supported by "substantial evidence." Under 28 U.S.C. § 636(b)(1)(C), this Court, upon objections being made to the Report of the Magistrate, is required to make a *de novo* review of those recommendations of the Magistrate's Report to which objection is made. This *de novo* review, in turn, requires this Court to reexamine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of fact by the Secretary are supported by "substantial evidence." 42 U.S.C. § 405(g); *Parish v. Califano*, 642 F.2d 188, 189 (6th Cir. 1981). The Supreme Court has stated that substantial evidence means:

[M]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See also, Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

■ To obtain benefits under the Social Security Act, the burden is initially on the claimant to show disability which prevents him from performing his usual work. The disability must result from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C). Once the claimant establishes a prima facie case of disability, the burden shifts to the Secretary to go forward with proof that the claimant has residual capacity for substantial gainful employment, and that there are jobs in the national economy which the claimant can perform. *Young v. Califano*, 633 F.2d 469, 470 (6th Cir. 1980); *Slaven v. Harris*, 508 F.Supp. 280, 283 (S.D.Ohio 1981). To meet this burden, the Secretary must receive evidence to show that the claimant can engage in substantial gainful work in light of the claimant's age, education, work experience, and physical condition. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The preferred method of receiving such evidence is through the testimony of a vocational expert. *O'Banner v. Secretary of Health, Education and Welfare*, 587 F.2d 321 (6th Cir. 1978).

■ At the outset, the time frames within which Plaintiff must establish his eligibility for benefits should be noted. As the ALJ observed in his decision (T. 22, 30–31), Plaintiff's Earning Record (T. 98) indicates that he last met the insured status requirements for disability insurance benefits on December 31, 1974. As a result, to receive those benefits, Plaintiff must have been disabled on or before December 31, 1974. 42 U.S.C. §§ 416(i)(2)(C)(i), 423(c)(1)(B)(i); *LeMaster v. Weinberger*, 533 F.2d 337, 338 (6th Cir. 1976). In contrast, the statutory provisions for supplemental security income establish no such limits. 42 U.S.C. § 1382 *et seq.* Accordingly, to receive these latter benefits, Plaintiff must have been disabled on or before the date of the ALJ's decision.

Cognizant of these different time frames, the ALJ chose to review and consider the rather voluminous medical evidence in the record together to determine first, if Plaintiff was disabled on December 31, 1974, and second, if he was disabled on the date of the decision (T. 27). The ALJ (T. 21–27) and the Magistrate (Report at 4–7) capably

summarized said evidence, and it need not be restated at great length herein.

The record indicates that Plaintiff was born on December 26, 1931, has an eighth grade education, and lives at home with his wife and four children (T. 43). He worked for Dayton Iron & Metal Company from 1958 to 1974, with the exception of working for the City of Dayton from 1966 to 1971 (T. 45). He worked as a loader, crane operator, street maintenance laborer, welder, and truck driver during this time, and all these jobs involved considerable lifting and other heavy labor (T. 45–47). Plaintiff has not worked since February of 1974, due to recurring chest pains, back problems, arthritis, and muscle spasms (T. 47–58). These ailments, Plaintiff claims, prevents him from walking more than a block, standing for more than 15 minutes, sitting for more than one hour (T. 61), from performing any sedentary work or housework (T. 62, 70), or from concentrating (T. 68). He says he must lie down as much as five hours each day (T. 62), but admits that he drives a car (T. 70).

A large number of medical reports in the record outline Plaintiff's ailments. Proceeding in roughly chronological order, the following reports are indicative of the medical evidence in the record. A report dated September 4, 1972, from Grandview Hospital, indicated that Plaintiff had been admitted for chest pain, but examination failed to reveal any abnormalities, and Plaintiff was told to return to work after bed rest (T. 299–300). A report dated October 9, 1974, from Miami Valley Hospital, noted that Plaintiff had "some mild complaints of chest pain" which "were not substantiated by any enzyme changes." His condition was said to result from "a hyperventilation syndrome and not anginal." ·This report also found *previous* medical characterizations of Plaintiff as a "coronary cripple" to be dubious, "in light of completely negative findings on coronary arteriography ...." (T. 122). In a report of June 14, 1974, Dr. Connors stated, after admission of Plaintiff for chest pain, that he "responded very well and rapidly to therapy" and was released "in very much improved condition." (T. 244).

The balance of the medical reports concern Plaintiff's condition after 1974. For example, a report from Dr. Schneider, dated March 4, 1977, stated that Plaintiff suffered from "congestive heart failure," and suggested therapy in the form of muscle relaxants and physical therapy. (T. 270–271). A report from Dr. Grefer, dated April 9, 1977, found Plaintiff to be suffering from "chronic lumbosacral syndrome." Dr. Grefer further stated that while Plaintiff was "disabled from any gross heavy bending, lifting and stooping," a "sedentary type of job with minimal lifting would be tolerated...." (T. 273). A report from Dr. Meyer, of April 6, 1978, stated that Plaintiff's mental status and memory was normal, but that he suffered from "chronic low back syndrome without clinical evidence of nerve root compression." (T. 195). A report from Dr. Johnson, of February 1, 1979, stated that Plaintiff's potential to resume work was "guarded" until his exact cardiac status could be determined. Until then, Dr. Johnson stated that Plaintiff's "[s]tatus is unclear and incomplete. It would be hazardous to take this man and his symptoms too lightly...." (T. 202). Dr. Johnson did, however, list Plaintiff's intellectual and emotional status as "normal." (T. 202). Finally, Dr. Belcher filed a psychiatric report on February 17, 1979. After Plaintiff had submitted to a battery of tests, the results of which indicated, *inter alia*, that his status was borderline mental retardation, Dr. Belcher stated that "[t]hese individuals characteristically develop physical symptoms as reactions to mental stress," (T. 276), and that Plaintiff had "low back pain without organic etiology." (T. 277). The prognosis was "poor" (T. 278), and Dr. Belcher concluded that Plaintiff's psychological impairments precluded any substantial gainful employment (T. 281).

At the hearing, the ALJ called Dr. Brown to testify as a vocational expert (T. 71–77). She testified that, assuming Plaintiff's testimony was taken as completely true, he could not return to his past work or any other work (T. 73–74). However, in re-

sponse to a question from the ALJ, she stated that, assuming Plaintiff's chest pain could be relieved by medication and that he could do sedentary work, there were jobs in the local economy which Plaintiff could perform (T. 75).

In his decision, the ALJ summarized the considerable evidence in the record (T. 22–27). He further stated that the evidence indicated no significant heart impairments, no credible evidence of a back impairment, and that Plaintiff's hypertension could be controlled with medication (T. 28). The ALJ also discounted the conclusions of Dr. Belcher's report, since no other reports found Plaintiff to suffer from psychiatric problems, and since Dr. Belcher did not fully set forth the results of the tests he administered (T. 29). Finally, the ALJ found much of Plaintiff's testimony at the hearing not to be credible, and not consistent with other evidence in the record (T. 30). In addition, the ALJ noted that Plaintiff's explanation of dirt under his fingernails was unsatisfactory, and that Plaintiff's admission that he had shoveled snow before being hospitalized in 1978 (T. 70) was inconsistent with his alleged inability to do any heavy work. Based on his evaluation of the evidence, the ALJ found that Plaintiff could not perform his previous work, but could engage in sedentary employment (T. 30–31). Accordingly, Plaintiff was found not to be disabled, for either disability insurance benefits or supplemental security income. (T. 33).

The Magistrate in this case also summarized the evidence, and agreed with virtually all of the aforementioned conclusions by the ALJ. Report at 5–6. However, the Magistrate found that the ALJ had not adequately stated his reasons for discounting the credibility of Plaintiff's testimony regarding the allegedly disabling pain. Report at 7. Specifically, the Magistrate stated that the dirty fingernail and snow shoveling incidents were insufficient facts upon which to predicate a rejection of credibility: the former because it was "unrelated to the facts of this case," the latter because it suggests (since Plaintiff was hospitalized thereafter) that he could *not* do heavy

work. *Id.* For these reasons, the Magistrate recommended that both motions for summary judgment be overruled, and that the case "be remanded to the Secretary in order for the ALJ to adequately articulate and identify the reasons for rejecting Plaintiff's credibility." Report at 7–8.

In his motion to review the Magistrate's Report (doc. 15), the Secretary points out that the Report fails to mention the fact that Plaintiff's eligibility for disability insurance benefits expired on December 31, 1974. In addition, he argues that a remand is unnecessary, since the ALJ had valid reasons, and adequately articulated the same, for rejecting Plaintiff's subjective complaints of disabling pain. Similarly, Plaintiff argues, in his memorandum contra the motion to review (doc. 16), that a remand will not change the decision of the ALJ, and that, for the reasons set forth in Plaintiff's motion for summary judgment (doc. 6), the ALJ's decision was not supported by substantial evidence, and hence should be reversed.

First, this Court is in agreement with those portions of the Magistrate's Report finding that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's physical or mental impairments were not disabling. This is so, whether one refers (as the Magistrate did not) to the time period for disability insurance benefits (until December 31, 1974), or the period for supplemental security income (until date of the ALJ's decision). The reasons advanced by Plaintiff to dispute this conclusion (doc. 6) are not convincing. For example, the reports by Doctors Schneider and Grefer do not "fully document" Plaintiff's assertion of disabling pain. Indeed, the report by Dr. Grefer specifically states that Plaintiff would be capable of sedentary work. Plaintiff's reference to a "coronary cripple" is taken out of context, since the report using that term specifically cast doubt on the validity of that characterization. Finally, this is not an instance, as suggested in a case cited by Plaintiff, of "strong psychiatric testimony ... from several expert witnesses" finding a claimant to

**206**

be disabled. *York v. Gardner*, 397 F.2d 209, 210 (6th Cir. 1968) (per curiam). There was only *one* psychiatric report to that effect in the case herein, and there was substantial evidence for the ALJ not to fully credit said report by Dr. Belcher.

Second, the Secretary's objection to the Report, regarding the failure of the Magistrate to refer to the relevant eligibility time frames, is well taken. There is substantial evidence in the record, premised on the reports summarized earlier in this opinion, to support the ALJ's conclusion that Plaintiff was not disabled either as of December 31, 1974, or as of April 9, 1979 (date of ALJ's decision) and, thus, not entitled to disability insurance benefits *or* supplemental security income.

■ Finally, the objections of both parties to the recommendation in the Report that the case be remanded to the ALJ, are well taken. As the Magistrate correctly stated, subjective complaints of pain, not necessarily accompanied by objective observable symptoms, can be disabling. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965); *Estes v. Harris*, 512 F.Supp. 1106, 1114 (S.D.Ohio 1981). To discount said complaints, the Secretary (through the ALJ) must expressly reject a claimant's credibility, and identify the reasons therefor. *Beavers v. Secretary of Health, Ed. and Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978). The Court finds that both of these conditions were met. In calling into question Plaintiff's credibility (T. 29), the ALJ mentioned that he was "not impressed" with the testimony of Plaintiff at the hearing (T. 30), referred to the two incidents mentioned above, and concluded that the "other evidence of record also does not bear out the testimony and subjective complaints" of Plaintiff. (T. 30). While perhaps not a textbook example of an ALJ discounting the credibility of a witness, the Court finds that the ALJ's statement herein adequately rejected the complaints of pain. It is true, as the Magistrate found, that the two incidents mentioned above, *when considered alone*, would probably not provide an adequate basis upon which to discount

credibility. However, the ALJ *did* refer to *other* evidence in the record. Said evidence, as indicated above, did not provide an "underlying medical basis" for allegations of *disabling* pain, such as to prevent Plaintiff from performing sedentary work. *Stamper v. Harris*, 650 F.2d 108, 110 (6th Cir. 1981); *McCann v. Califano*, 621 F.2d 829, 832 (6th Cir. 1980). For these reasons, and given the deference traditionally affordable to the credibility finding of an ALJ, *see Beavers, supra; Kirk, supra*, 667 F.2d at 538, the recommendation of the Magistrate to remand the case must be, and is, rejected.

Accordingly, the Court rejects that portion of the Magistrate's Report which recommends a remand to the Secretary, and adopts the balance of the Report in full.

III. CONCLUSION

Based on the above analysis of facts and legal principles, the Court finds that the objections of Defendant to the Report and Recommendation of the Magistrate are well taken, and that the objections of Plaintiff to the Report are not well taken, save for the objection to the recommendation to remand. Accordingly, the Court finds that said Report and Recommendation should be rejected in part, and adopted in part, as set forth earlier in this opinion. It is so ordered.

WHEREFORE, based on the aforesaid, the Court overrules Plaintiff's motion for summary judgment, and sustains Defendant's motion for summary judgment. The Court thus finds that the Plaintiff was not disabled on or before December 31, 1974, and that he is, therefore, not entitled to disability insurance benefits. The Court also finds that the Plaintiff was not disabled on or before the date of the ALJ's decision, and that he is, therefore, not entitled to supplemental security income benefits.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.